UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL GREENWALD, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> *Defendants.* | Civil Action No. 17-797 (EGS) |

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Michael Greenwald, a Medicare beneficiary, brings the above-captioned First Amended Complaint against the Secretary of the Department of Health and Human Services ("HHS") and the Administrator of the Centers for Medicare & Medicaid Services ("CMS") ("Defendants").[1]  The Complaint alleges that Plaintiff suffers from lymphedema, which is a chronic medical condition that results in the accumulation of fluid in the subcutaneous tissue.  ECF No. 26 ¶ 1.  Plaintiff's claim for reimbursement of a pneumatic compression device to treat his condition was denied by Noridian, a CMS contractor that processes Medicare claims.  Plaintiff alleges that denial was improper because Noridian applied a Local Coverage Determination

---

[1] Plaintiff originally brought suit against two additional Defendants: Noridian Healthcare Solutions, LLC ("Noridian"), and CGS Administrators, LLC ("CGS").  ECF No. 1.  Plaintiff voluntarily dismissed Noridian and CGS without prejudice on August 23, 2017 (ECF No. 16), and they are not named as defendants in the First Amended Complaint (ECF No. 26).

("LCD") that was allegedly more restrictive than CMS's National Coverage Determination ("NCD").[2] ECF No. 26 ¶ 45.

Plaintiff, however, cannot discharge his burden to establish subject matter jurisdiction over his claim. First, Plaintiff has no standing to bring the instant action because this Court cannot redress his alleged injury. Under the NCD, the validity of which is not in dispute, Plaintiff's claim for a pneumatic compression device would still have denied because Plaintiff did not meet the NCD's requirements for a four-week trial of conservative therapy or the completion an initial treatment with a pneumatic compression device.

Second, it is well-settled that Section 405(h) of the Medicare statute bars federal question jurisdiction under 28 U.S.C. Sections 1331 and 1346. *See* 42 U.S.C. §§ 405(h), 1395ii; *Illinois Council v. Shalala*, 529 U.S. 1, 5 (2000). While the Medicare statute provided Plaintiff a path to judicial review, he failed to exhaust his administrative remedies, and therefore, the denial of his claim for Medicare reimbursement cannot be reviewed by this Court.

Third, the narrow basis for jurisdiction afforded by 42 U.S.C. § 1395ff(f)(3) is inapplicable here. Section 1395ff(f)(3) places the burden on Plaintiff to show that "there are no material issues of fact in dispute" and "the only issue of law is the constitutionality of a provision of this subchapter, or that a regulation, determination, or ruling by the Secretary is invalid." *Id.* Plaintiff cannot meet this standard, however, because certain material issues of fact in this case are highly disputed. In particular, the Court will not be able to resolve the issue of whether the LCD impermissibly restricts the NCD, because doing so would require the Court to weigh conflicting

---

[2] NCDs are developed by CMS to describe the circumstances for Medicare coverage nationwide for an item or service. A LCD is a decision by a Medicare Administrative Contractor ("MAC") whether to cover a particular item or service in the contractor's geographic jurisdiction in accordance with Section 1862(a)(1)(A) of the Social Security Act (that is, a determination as to whether the item or service is reasonable and necessary).

scientific evidence and expert opinions. Accordingly, the Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND

### I. "Reasonable and Necessary" Medicare Expenses

Medicare is a federal health insurance program for people who are elderly and/or have disabilities. *See* 42 U.S.C. § 1395. For a medical service to be covered by Medicare, it must fit within a benefit category defined by the Medicare statute. *Id.*

This case concerns Medicare Part B, which covers "medical and other health services." *See* 42 U.S.C. § 1395k. The various benefit categories available under Medicare Part B are set forth in 42 C.F.R. part 410, which defines the outer limit on categories of benefits that Medicare may cover. Almost all Medicare coverage determinations are subject to 42 U.S.C. § 1395y(a)(1)(A), which excludes certain items from coverage. Under this section, "no payment may be made under . . . part B of this subchapter for any expenses incurred for items or services[] which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member . . . ." 42 U.S.C. § 1395y(a)(1)(A). Unless there is an exception, this bar applies "[n]othwithstanding any other provision" of the Medicare statute. 42 U.S.C. § 1395y(a)(1)(A).

There is no presumption that payment will be made for any service in any particular case. As the Supreme Court has stated, "The Secretary's decision as to whether a particular medical service is 'reasonable and necessary' and the means by which [the Secretary] implements [the] decision, whether by promulgating a generally applicable rule or by allowing individual adjudication, are clearly discretionary functions." *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

3

To accomplish the task of administering the "reasonable and necessary" standard, the Secretary employs a range of tools, from formal regulations to informal manuals.  In choosing among these options, the Secretary is not required to promulgate regulations or policies that, "either by default rule or by specification, address every conceivable question" that may arise.  *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995).  At the highest level of generality, the Secretary may articulate "reasonable and necessary" standards through formal regulations that have the force and effect of law throughout the administrative process.  *See* 42 U.S.C. § 1395hh; 42 U.S.C. § 1395ff(a)(1).  The Secretary may also issue NCDs "with respect to whether or not a particular item or service is covered nationally."  42 U.S.C. § 1395ff(f)(1)(B); *see also* 42 C.F.R. §§ 400.202, 405.1060.  Like regulations, NCDs are legally binding on contractors and adjudicators throughout the Medicare administrative claims appeals process.  42 C.F.R. § 405.1060(a)(4).

## II. Enforcement of the "Reasonable and Necessary" Standard Through Local Coverage Determinations

The Secretary has delegated to CMS the broad authority to determine whether Medicare covers particular medical services, and CMS may therefore contract with Medicare Administrative Contractors ("MACs"), such as Noridian in this case, to administer the Medicare program.  *See* 42 U.S.C. §§ 1395ff(a), (f);  1395kk-1; 1395y(a).  Consistent with controlling regulations and NCDs, a MAC makes coverage determinations, issues payments, and develops LCDs for the geographic area it serves, in accordance with the reasonable and necessary provisions in 42 U.S.C. § 1395y(a)(1).  *See* 42 U.S.C. §§ 1395kk-1(a)(4), 1395ff(f)(2)(B).  Each MAC is responsible for administering the Medicare program within its unique geographic jurisdiction.  *See* 42 U.S.C. § 1395ff(f)(2)(B) (LCDs are determinations "respecting whether or not a particular item or service is covered on an intermediary- or carrier-wide basis").

In developing LCDs, such as the one at issue in this case, MACs follow guidance contained in the Medicare Program Integrity Manual ("the Manual" or "MPIM").[3] The Manual requires MACs to publish LCDs that specify when "an item or service is considered to be reasonable and necessary." MPIM § 13.1.3. MACs develop LCDs by "considering medical literature, the advice of local medical societies and medical consultants, public comments, and comments from the provider community." *Id.*; 66 Fed. Reg. 58,788, 58,788 (Nov. 23, 2001). MACs also follow detailed procedures for issuing new or substantively revised LCDs, including engaging in a comment-and-notice period, soliciting feedback and recommendations from the medical community, and presenting the policy in meetings of stakeholders. MPIM § 13.7.4.

LCDs are "administrative and educational tools" that are published by contractors "to provide guidance to the public and the medical community within their jurisdictions" as to the "clinical circumstances" under which a "service is considered to be reasonable and necessary." MPIM § 13.1.3. Thus, MACs have the authority either to review claims individually, 42 U.S.C. § 1395ff, but a LCD is only binding on the contractor that issued it and only at the initial stages of the Medicare claim review process, as opposed to when a claimant appeals a MAC's determination. 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II).

### III. The Process of Promulgating LCDs

New LCDs require both a notice period and a comment period. MPIM § 13.7.2. A MAC first issues a draft LCD and provides the public a minimum of 45 days to comment on it. After considering all of the comments and revising the LCD as needed, the contractor publishes the final LCD, providing at least a 45-day notice period before the LCD goes into effect. *Id.* at § 13.7.4.

---

[3] The Manual is available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/pim83c13.pdf.

### IV.     The LCD and NCD for Pneumatic Compression Devices

In 2002, CMS published a NCD for pneumatic compression devices (# 280.6).  *See* Declaration of Peter Gurk, M.D. in Support of Defendants' Motion to Dismiss ("Gurk Decl.") ¶ 5; Def. Ex. 1; ECF No. 26 ¶ 31.[4]  The NCD covers pneumatic compression devices for the treatment of lymphedema provided certain conditions have been met, including an unsuccessful four-week trial of conservative therapy under physician oversight.  Def. Ex. 1 at 1.

In 2011, Noridian published a draft revision to their existing LCD on pneumatic compression devices and solicited public comment.  ECF No. 26 ¶ 33.  The MAC scheduled a final LCD to take effect on November 1, 2014, but suspended it following additional comments and discussions with stakeholders who objected to the coverage changes.  *Id.* at ¶ 34.  The final LCD became effective on December 1, 2015.  *Id.*; Gurk Decl. ¶ 6.

### V.     Plaintiff's Lymphedema and Medical Treatment

Plaintiff was diagnosed with chronic lymphedema in September 2014.  ECF No. 26 ¶ 48.  According to Plaintiff's medical records, on September 3, 2014, Plaintiff visited Lankenau Hospital for an evaluation regarding his lymphedema.[5]  Def. Ex. 3 at 9-11.  The doctor recommended Tubigrip D/E elastic stockings, which was a conservative treatment option.

---

[4] Each of Defendants' exhibits is attached to the Gurk Declaration.  Further, each of Defendants' exhibits were contained in the Complaint; attached to the Complaint; or were part of the administrative record referenced in the Complaint and its attachments.  As discussed below, these exhibits may be considered when determining whether subject matter jurisdiction exists.

[5] Plaintiff's medical records are referenced throughout the Complaint.  *See, e.g.*, ECF No. 26 ¶¶ 48-57.  The medical records that Plaintiff submitted with his redetermination request (ECF No. 1, Ex. 1), which are part of the record of Plaintiff's administrative appeal, are attached to the Gurk Declaration as Exhibit 3 [Filed Under Seal].  Gurk Decl. ¶ 8.

*Id.* at 11.  If that failed, the doctor planned to consider prescribing a pneumatic compression device.  *Id.*

On September 15, 2014, Plaintiff visited Lankenau for a follow-up.  *Id.* at 12-17.  The physician noted that Plaintiff either could not put on the Tubigrip stockings or they would not stay up.  *Id.* at 15.  During a follow-up on October 6, 2014, the physician again noted that Plaintiff either could not put on the Tubigrip stockings or they would not stay up.  *Id.* at 21.  The physician recommended pneumatic compression device therapy, but Plaintiff was "not willing to make the time sacrifice."[6]  *Id.* at 22.

Nearly two years later, on July 22, 2016, Plaintiff returned to Lankenau, complaining that his lymphedema had worsened.  *Id.* at 22.  The physician placed an order for a "four-chamber intermittent pneumatic compression pump . . . with initial settings of 50 mmHg, apply 3 times a day for 60 minutes."  *Id.* at 28.  Records from August 5, 2016, stated that Plaintiff conducted a 35-minute trial of a pneumatic compression device.  *Id.* at 7.  This is the only medical record measuring the circumference of Plaintiff's legs (around the thigh, knee, calf, and ankle), pre- and post-compression therapy.  *Id.*

Before Plaintiff began using a pneumatic compression device, he signed an Advance Beneficiary Notice form acknowledging in writing that if Medicare coverage for his pneumatic compression device were denied, he would be responsible for payment.  Def. Ex. 3 at 8.  The form notified Plaintiff of certain deficiencies in his claim—in particular the "Reason Medicare May Not Pay" section states:  "Your medical records don't document certain coverage criteria listed in the

---

[6] The physician also stated, "He has demonstrated complete compliance in following my recommendation, but unfortunately his lymphedema symptoms are not improved."  It is unclear what other "recommendation" the physician was referring to in this note.  Def. Ex. 3 at 22.

7

LCD; the strength of the compression garment isn't documented; girth measurements haven't been taken." *Id.*

### VI. Plaintiff's Claim and the Administrative Appeal Process

In order for a beneficiary to challenge a denial of a claim based on a LCD under the Medicare statute, he must submit a claim for payment, and if the claim is denied, the beneficiary must generally exhaust the following four levels of administrative review before filing suit in district court: First, the patient may seek a redetermination from the MAC, which must be performed by a person who did not make the initial decision. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940, *et seq*. At the second level, a patient may seek reconsideration by a qualified independent contractor whose panel members must have "sufficient medical, legal, and other expertise, including knowledge of the Medicare program." 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.968(c)(1). The Local Coverage Determination is not a controlling authority at this level of review. *See* 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II). At the third level, a patient can request a hearing before an administrative law judge ("ALJ"). 42 U.S.C. § 1395ff(d); 42 C.F.R. § 405.1002. Finally, the administrative process ends in a review of the ALJ's decision by the Medicare Appeals Council, which receives briefs and may entertain oral argument. 42 U.S.C. §§ 1395ff(b)(1)(A), (d)(2); 42 C.F.R. §§ 405.902, 405.1100, *et seq*. The Appeals Council's decision is the Secretary's final decision and is judicially reviewable. 42 U.S.C. §§ 1395ff(b)(1)(A), (d)(2)(A); 42 C.F.R. § 405.1136.

After Plaintiff made a claim for payment, the MAC denied it on August 24, 2016. Gurk Decl. ¶ 7; ECF No. 26 ¶ 55. Plaintiff sought a redetermination from the MAC on August 30, 2016, and on October 18, 2016, the MAC upheld its denial, citing the language of the LCD. Gurk Decl. ¶¶ 8-9, Exs. 3-4; ECF No. 26 ¶ 56. Plaintiff thereafter filed this lawsuit and did not pursue any

further administrative remedies, including appeal of his claim to a Qualified Independent Contractor, ALJ, or the Medicare Appeals Council.  ECF No. 26 ¶¶ 55-57; Gurk Decl. ¶ 10.[7]

### VII. Plaintiff's Allegation that the LCD is More Restrictive than the NCD

Pursuant to the NCD, a Medicare beneficiary only qualifies for a pneumatic compression device under certain circumstances, which include, in pertinent part, the following: The Medicare recipient must have undergone a four-week trial of conservative therapy, after which his doctor must have determined that there has been no significant improvement or that significant symptoms remain.  Def. Ex. 1 at 1.  The doctor's determination "must include," among other things, "[s]ymptoms and objective findings, including measurements which establish the severity of the condition."  *Id*.  It must also include data with respect to the "clinical response to an initial treatment with the device," and that must "include[] the change in pre-treatment measurements." *Id.* at 2.  During the course of treatment, the patient must use a compression garment and the garment "must provide adequate graduated compression."  *Id.* at 1.  The LCD at issue interprets "adequate graduated compression" to mean "starting with a minimum of 30 mmHg distally."  Def. Ex. 2 at 5.

Plaintiff alleges that this LCD is inappropriately stricter than the controlling provisions of the NCD.  ECF No. 26 ¶ 8.  But the LCD clearly does not restrict the NCD; instead, the LCD appropriately explains and interprets the NCD.

---

[7] In addition, Plaintiff did not seek other avenues of administrative review, such as direct review of the LCD before an ALJ under 42 U.S.C. §1395ff(f)(2).  Nor did Plaintiff request reconsideration by the MAC of the final LCD. MPIM § 13.11 ¶¶ A-B and ¶¶ E.1, E2.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court must dismiss a claim for relief when the complaint "lack[s] . . . subject-matter jurisdiction." To survive a motion to dismiss under Rule 12(b)(1), plaintiffs bear the burden of proving that the Court has subject-matter jurisdiction to hear their claims. *Olson v. United States*, 953 F. Supp. 2d 223, 228 (D.D.C. 2013); *U.S. Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). When a federal court is faced with both a challenge to its Article III jurisdiction to hear a claim as well as a challenge to the merits of that claim, the court must address the jurisdictional question before addressing any question of the merits. *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 253 (D.D.C. 2012).

A court has an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *Olson*, 953 F.Supp. 2d at 228 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Where necessary to resolve a jurisdictional challenge, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

**ARGUMENT**

I.   **Plaintiff has No Standing to Bring the Claims Alleged in the Complaint.**

Under Article III of the Constitution, a federal court has jurisdiction only where the action presents an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz.*

*Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). Because standing is a prerequisite for the existence of a case or controversy, a federal court must resolve any doubt about the plaintiff's standing. *See Lee's Summit v. Surface Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000).

In order to establish standing, the following is required:

> [A] plaintiff must suffer "an 'injury in fact'—an invasion of a legally protected interest"—which is concrete and particularized and is actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In addition, "there must be a causal connection between the injury and the conduct complained of." *Id*. (quoting *Simon v. Eastern Ky. Rights Org.*, 426 U.S. 26, 41-42 (1976)). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id*. (quoting *Simon*, 426 U.S. at 38, 43).

*Tipograph v. U.S. Dep't of Justice*, 146 F. Supp. 3d 169, 175 (D.D.C. 2015). Because standing is essential to jurisdiction, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Assessing a plaintiff's standing primarily involves examining the complaint. *See Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987).

Plaintiff's claim cannot be redressed by a favorable decision of this Court. Even assuming Plaintiff succeeds on his LCD challenge, he would still be ineligible for the pneumatic compression device under the NCD, the validity of which Plaintiff does not contest. Pursuant to the NCD, in order to qualify for Medicare coverage of the device, Medicare recipients must undergo a four-week trial of conservative therapy, after which their doctor must determine that there has been no significant improvement or that significant symptoms remain. Def. Ex. 1 at 1. The doctor's determination of the medical necessity of the device "must include," among other things,

11

"[s]ymptoms and objective findings, including measurements which establish the severity of the condition." *Id.* It must also include data with respect to the "clinical response to an initial treatment with the device," and that must "include[] the change in pre-treatment measurements." *Id.* at 1-2.

According to Plaintiff's medical records, which were attached to his reconsideration request, he participated in a trial using compression stockings in 2014. Def. Ex. 3. The purpose of the trial was to evaluate whether Plaintiff's lymphedema symptoms significantly improved using that conservative treatment option, such that a pneumatic compression device would not be medically necessary. *Id.* at 11; Def. Ex. 1 at 1. However, the conservative trial was deficient under the NCD in at least two ways. First, and most importantly, the physician did not take any measurements during the course of the trial that would establish the severity of Plaintiff's lymphedema or show whether the use of compression stockings reduced his swelling.[8] Def. Ex. 3 at 9-29. Second, during each follow-up appointment, the physician noted that Plaintiff either could not put on the compression stockings or they would not stay up. *Id.* at 15, 22. That is, Plaintiff did not actually wear the compression stockings and therefore never completed the four-week trial.

In addition, Plaintiff's initial treatment with the pneumatic compression device failed to establish his "ability to tolerate the treatment session and parameters," as required under the NCD. Def. Ex. 1 at 2. The physician prescribed a 60-minute treatment, but the trial only lasted for 35 minutes. Def. Ex. 3 at 6-7, 28. Accordingly, there was no evidence that Plaintiff could tolerate using the device at home per his physician's instructions.

---

[8] Accordingly, the Advance Beneficiary Notice form stated that Plaintiff might be ineligible for Medicare reimbursement because "girth measurements haven't been taken." *Id.* at 8.

12

In sum, Plaintiff does not qualify for the pneumatic compression device under the terms of the NCD, and Plaintiff does not challenge the NCD in this case. Therefore, even if the Court were to find that the LCD was in some way invalid, this Court will be incapable of redressing Plaintiff's injury. Accordingly, Plaintiff's claim should be dismissed for a lack of standing pursuant to Rule 12(b)(1).

## II. Plaintiff Has Abandoned His Assertion of Federal Question Jurisdiction

Plaintiff's original Complaint supported his claim for federal question jurisdiction under 28 U.S.C. Sections 1331 and 1346 by seeking an order requiring that his "denied claim be reversed and covered under Medicare Part B." ECF No. 26 ¶¶ 10, 81. The First Amended Complaint, however, deletes that requested relief (ECF No. 26-4 at 24) and does not assert any other claim seeking coverage of his pneumatic compression device under Medicare Part B. As a result, Plaintiff has no stake in the outcome of this matter, and his purported injury (*i.e.*, paying for the device out-of-pocket) could not be redressed by a favorable decision. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (the requirement that a plaintiff show standing, like other justiciability concerns, "assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party" and "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." (emphasis in original) (internal quotation marks and citations omitted). Accordingly, federal question jurisdiction is plainly absent here.

## III. Plaintiff Has Failed to Exhaust His Administrative Remedies, and Therefore, this Court Has No Subject Matter Jurisdiction under the Medicare Statute.

Plaintiff's invocation of federal question jurisdiction is also foreclosed by Section 405(h) of the Social Security Act, which states that "[n]o action against the United States, [the Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to

13

recover on any claim arising under this subchapter" and "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or government agency except as herein provided." 42 U.S.C. § 405(h) (emphasis added); *id.* at § 1395ii (incorporating § 405(h) into the Medicare statute).

"[A] plaintiff must proceed with a claim arising under the provisions of the Medicare Act (which contains administrative exhaustion procedures) as opposed to proceeding with a suit under 28 U.S.C. § 1331 (general federal question jurisdiction, which does not contain administrative exhaustion procedures)." *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 16 n.8 (D.D.C. 2008). That is, under the Medicare statute, jurisdiction for judicial review is contingent upon a final decision of the Secretary, which requires both presentment of a claim and exhaustion of administrative remedies. 42 U.S.C. § 1395ff(b)(1) (incorporating 42 U.S.C. § 405(g)); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984). To exhaust administrative remedies in the claims appeals process, a plaintiff must complete all four levels of administrative review described above, including reconsideration, redetermination, an ALJ hearing, and review by the Medicare Appeals Council. *Cal. Clinical Lab. Ass'n v. Sec'y of Health & Human Servs.*, 104 F. Supp. 3d 66, 72 (D.D.C. 2015) (citing 42 U.S.C. § 1395ff(b)-(c); 42 C.F.R. § 405.900).

The exhaustion process serves the important purpose—particularly salient in this case—of preventing "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *see also Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 (1999) (jurisdiction "under the federal question statute, 28 U.S.C. § 1331, is precluded by 42 U.S.C. 405(h).").

In *Illinois Council v. Shalala*, an association of nursing home providers challenged certain CMS regulations governing nursing homes, asserting that the regulations were inconsistent with the Medicare Act, failed to comply with APA rule-making requirements, and violated due process. 529 U.S. 1, 7 (2000).  The Supreme Court noted that where a suit challenges the denial of Medicare reimbursement, the Medicare statute "plainly bars § 1331 review . . . irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional or other legal grounds." *Id.* at 10.  The Court refused to "accept a distinction that limits the scope of § 405(h) to claims for monetary benefits." *Id.* at 14.  "All aspects" of a grievance must be channeled through the administrative process, *id.* at 12, even though it may mean a postponement of review of some legal claims in some instances, *id.* at 20.  The Court concluded that Section 405(h) "as incorporated by § 1395ii, bars federal-question jurisdiction," and requires providers to "proceed instead through the special review channel" of the Medicare statute, including exhaustion of administrative remedies.  *Id.* at 5; *accord Ringer*, 466 U.S. at 614.

This action stems from Plaintiff's claim for Medicare benefits, namely reimbursement for his purchase of a pneumatic compression device.  ECF No. 26 ¶¶ 54-57.  Accordingly, Section 405(h) forecloses jurisdiction under Sections 1331 and 1346.  Further, Plaintiff cannot invoke jurisdiction under the Medicare statute.  Once the MAC denied Plaintiff's claim and then upheld its denial, Plaintiff abandoned the administrative appeal process.  Gurk Decl. ¶ 10.  Accordingly, the MAC's determination became administratively final and non-appealable.  That is, in abandoning the administrative appeals process, Plaintiff closed the door on his ability to bring this action in federal court.  All of Plaintiff's claims should therefore be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### IV. Plaintiff Cannot Salvage His Claim by Invoking Jurisdiction Under 42 U.S.C. Section 1395ff(f)(3).

If this Court has no jurisdiction under Sections 1331 and 1346, Plaintiff has only one way forward: to thread the needle of jurisdiction with Section 1395ff(f)(3) of the Medicare statute. His case, however, does not meet the strict requirements to support this limited basis for jurisdiction.

Congress has provided, through 42 U.S.C. § 1395ff(f)(3), a short-cut to judicial review for beneficiaries challenging LCDs on purely legal grounds. For any "determination that may otherwise be subject to review under . . . paragraph (2)(A)(i)" (that is, by an ALJ), the moving party "may seek review by a court of competent jurisdiction without filing a complaint under such paragraph and without otherwise exhausting other administrative remedies," so long as the moving party alleges that "there are no material issues of fact in dispute" and "the only issue of law is the constitutionality of a provision of this subchapter, or that a regulation, determination, or ruling by the Secretary is invalid." 42 U.S.C. § 1395ff(f)(3). Essentially, Section 1395ff(f)(3) is a "limited exception" in which the "question is purely legal, regarding the interpretation of the authority granted in the Act, and any factual matters raised by plaintiffs are immaterial to its resolution. It is this narrow question to which the court's inquiry is limited." *Hays v. Leavitt*, 583 F. Supp. 2d 62, 66 (D.D.C. 2008), *aff'd* 589 F.3d 1279 (D.C. Cir. 2009).

While Plaintiff invokes the authority of Section 1395ff(f)(3), he does not present a "purely legal" question—instead, he raises the fact-intensive issue of whether the LCD improperly restricts or conflicts with the NCD. ECF No. 26 ¶¶ 5-8. Moreover, as further explained below, his case is riddled with disputed factual issues that are material to the resolution of this case.

Determining whether this LCD is more restrictive than the applicable NCD is a complicated inquiry that cannot be resolved without the consideration of a wide range of evidence. The NCD mandates that a Medicare recipient can only qualify for a pneumatic compression device if, among other things, the recipient participated in a trial that included the use of a compression

16

garment that "provide[d] adequate graduated compression." Def. Ex. 1 at 1. The LCD interprets "adequate graduated compression" to mean "starting with a minimum of 30 mmHg distally." Def. Ex. 2 at 5. Under the Manual, the MAC was required to develop this LCD by "considering medical literature, the advice of local medical societies and medical consultants, public comments, and comments from the provider community." MPIM § 13.1.3; 66 Fed. Reg. 58,788, 58,788 (Nov. 23, 2001). CMS instructs contractors to base coverage decisions on the strongest evidence available, which, in order of preference, includes: (1) Published authoritative evidence derived from definitive randomized clinical trials or other definitive studies; and (2) General acceptance by the medical community (standard of practice), as supported by sound medical evidence.[9] MPIM § 13.7.1. Sound medical evidence should include: (a) scientific data or research studies published in peer-reviewed medical journals; (b) consensus of expert medical opinion (i.e., recognized authorities in the field); or (c) Medical opinion derived from consultations with medical associations or other health care experts. MPIM § 13.7.1.

There could hardly be a more fact-intensive question than whether the minimum compression required under the LCD restricts—or simply explains—the requirement of "adequate" compression under the NCD. Were this case to go to trial, opposing sides would have to introduce evidence from clinical trials, studies, data, research, and testimony from physicians and health care experts in order to establish what is "adequate graduated compression" for the purposes of a pneumatic compression device. Far from being a "purely legal [question] regarding

---

[9] CMS provides examples of evidence that would not support a coverage decision. For example, the Manual states, "Acceptance by individual health care providers, or even a limited group of health care providers, normally does not indicate general acceptance by the medical community." *Id.* at § 13.7.1. The Manual also states, "Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not sufficient evidence of general acceptance by the medical community." *Id.*

the interpretation of the authority granted in the Act," it involves a plethora of factual matters, all of which are material to determining whether the LCD restricts the corresponding NCD.  Plaintiff is therefore barred from using Section 1395ff(f)(3) as a basis for subject matter jurisdiction.

### V. Plaintiff Has No Standing to Argue that Defendants Were Obligated to Establish a Mediation Process.

Plaintiff alleges in Count IV that Defendants failed to establish a mediation process to address a "large number of complaints from stakeholders about the LCD for pneumatic compression devices."  ECF No. 26 ¶ 76.  In doing so, Plaintiff invokes Section 1395ff(i), which states:

> (i)  Mediation process for local coverage determinations
>
> (1)  Establishment of process
>
> The Secretary shall establish a mediation process under this subsection through the use of a physician trained in mediation and employed by the Centers for Medicare & Medicaid Services.
>
> (2)  Responsibility of mediator
>
> Under the process established in paragraph (1), such a mediator shall mediate in disputes between groups representing providers of services, suppliers (as defined in section 1395x(d) of this title), and the medical director for a Medicare administrative contractor whenever the regional administrator (as defined by the Secretary) involved determines that there was a systematic pattern and a large volume of complaints from such groups regarding decisions of such director or there is a complaint from the co-chair of the advisory committee for that contractor to such regional administrator regarding such dispute.

28 U.S.C. § 1395ff(i).

Plaintiff suffered no injury that was a consequence of the alleged violation of Section 1395ff(i), nor could he.  The provision requires the regional administrator to mediate disputes in

18

limited circumstances involving disputes between "groups representing providers of services, suppliers, . . . and the medical director for a Medicare administrative contractor."  *Id.*  Plaintiff falls into none of these categories and therefore, has no standing to assert that Defendant should have established a mediation process.  *See* ECF No. 26 ¶ 76.  In any event, this statute vests in the Regional Administrator sole discretion in permitting a mediation process; that is, there is no non-discretionary duty to initiate mediation that could give rise to a valid cause of action.  28 U.S.C. § 1395ff(i).[10]  Accordingly, Plaintiff's claim under Section 1395ff(i) should be dismissed for a lack of standing pursuant to Rule 12(b)(1).[11]

---

[10] See *Cal. Clinical Lab.*, 104 F. Supp. 3d at 84-86 (rejecting the argument that the Regional Administrator was obligated to initiate mediation under Section 1395ff(i) and stating, "This Court concludes that [the plaintiff] has neither demonstrated that it has any clear right to an order requiring the Secretary to comply with these procedural mandates, nor has it shown that the Secretary has any clear, nondiscretionary duty to act under the provisions at issue.").

[11] Counts I, II, III, and V, which concern Plaintiff's allegations that Defendants have violated the Administrative Procedure Act, must be dismissed if the Court grants this Motion.  If the Court does not do so, the Parties will submit a briefing schedule to the Court and address the relevant issues in summary judgment proceedings.

## CONCLUSION

For foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

Dated: December 4, 2017

Respectfully submitted,

JESSIE K. LIU
D.C. Bar # 472845
United States Attorney


DANIEL F. VAN HORN
D.C. BAR # 924092
Chief, Civil Division


By: */s/ Joshua L. Rogers*

JOSHUA L. ROGERS
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2578
email:  Joshua.Rogers3@usdoj.gov

*Counsel for Defendants*

Brian Stimson
Acting General Counsel

Jan M. Lundelius
Chief Counsel, Region III

Eric S. Wolfish
Assistant Regional Counsel
Office of the General Counsel, Region III
U.S. Department of Health and Human Services
Public Ledger Building, Suite 418
150 S. Independence Mall West
Philadelphia, PA 19106
Eric.Wolfish@hhs.gov

*Of Counsel*

20