UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL GREENWALD,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES, *et al.*,<br><br>    Defendants. | Civil Action No. 17-0797 (EGS) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR CLARIFICATION OF THIS COURT'S JUNE 7, 2022, MEMORANDUM OPINION AND ORDER**

Plaintiff's Motion for Clarification of this Court's June 7, 2022, Memorandum Opinion and Order (the "Order) should be denied because the Order is unambiguous. With respect to jurisdiction under 42 U.S.C. § 1395ff(f)(3), the only issue that Plaintiff raised in response to the Magistrate Judge's Report and Recommendation, and the only issue ultimately decided in the Order, was whether certain conservative therapy trial requirements in Local Coverage Determination ("Local Determination" or "LCD") L33829 are invalid because they conflict with National Coverage Determination ("National Determination" or "NCD") 280.6. The Court ultimately held that that specific conflict provided jurisdiction under section 1395ff(f)(3), but it did not purport to invalidate the entire Local Determination. Order at 23-24, 29. Plaintiff's Motion, which seeks to transform the Court's narrow ruling regarding jurisdiction into a final judgment on the merits—without the benefit of full substantive briefing on the issues—should be denied.

Plaintiff's interpretation of the Order is wrong for two principal reasons. First, the procedural history demonstrates that the Order was limited to determining subject matter

jurisdiction.  The Court stayed briefing on summary judgment issues pending a decision on Defendants' motion to dismiss.  Minute Order of February 12, 2018.  While litigating Defendants' motion to dismiss, Plaintiff focused solely on the conservative therapy trial requirements, abandoning the other purported conflicts between the National Determination and Local Determination that he initially identified.  Consistent with this procedural history, the Order narrowly held that the conservative therapy trial requirements in the Local Determination conflicted with the National Determination and established subject matter jurisdiction under section 1395ff(f)(3).  The Order did not invalidate the entire Local Determination, because that issue was neither briefed by the parties nor properly before the Court on a motion to dismiss.

Second, Plaintiff's assertion that an entire Local Determination must be withdrawn if it contains any invalid language lacks any support in the caselaw and conflicts with the long-standing doctrine of severability.  Under the severability doctrine, the conservative therapy trial requirements in the Local Determination must be severed unless the agency intended them to be intertwined with the entire Local Determination.  The regulations concerning challenges to National and Local Coverage Determinations before the Departmental Appeals Board ("Appeals Board") under sections 1395ff(f)(1) and (f)(2), which are similar to such challenges originally filed in federal court under section 1395ff(f)(3), reflect the agency's position that invalid provisions of a Local Determination should be severed.  *See* 42 C.F.R. Part 426.  In addition, the conservative therapy trial requirements operate independently from the many other topics in Local Determination L33829 and thus cannot be considered "intertwined" with the entire Local Determination.  Accordingly, the Court's narrow Order should not be interpreted to invalidate the entire Local Determination.

Finally, to avoid unnecessary litigation, CMS has attempted to work with Plaintiff to revise the Local Determination in a manner that would effectuate the Order, *i.e.*, remove the language in Local Determination L33829 that the Court found impermissibly conflicted with National Determination 280.6. Unfortunately, Plaintiff's Motion indicates that the parties are at an impasse. To the extent that the Court grants clarification, it should find that Defendants' proposed redline of the Local Determination (attached as Exhibit A) implements the Order. The Court should further determine that, by revising the Local Determination retroactive to the date of the Court's Order and covering Plaintiff's instant claim for a pneumatic compression device, there would be no remaining case or controversy and this matter may be dismissed as moot.

## ARGUMENT

### I. THE PROCEDURAL HISTORY ESTABLISHES THAT THE ORDER DID NOT INVALIDATE THE ENTIRE LOCAL DETERMINATION

On December 4, 2017, Defendants moved to dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction. ECF No. 27. On December 18, Plaintiff filed a consolidated motion for summary judgment and response to Defendants' motion to dismiss, which sought to invalidate the Local Determination. ECF No. 29. Defendants moved to stay proceedings on Plaintiff's motion for summary judgment (ECF No. 32), and, on February 12, 2018, the Court issued a Minute Order granting Defendants' motion to stay and holding that "[f]urther briefing on plaintiff's motion for summary judgment is hereby stayed pending further order of the Court." That order has not been lifted to date.

In response to Defendants' motion to dismiss, Plaintiff initially asserted that there were at least eight conflicts between the National Determination and Local Determination that could support jurisdiction under section 1395ff(f)(3). *See* ECF No. 30 at 15-16, 32-33. Defendants argued that none of these conflicts could support jurisdiction under section 1395ff(f)(3), because

3

they raised material issues of fact in dispute. *See* ECF No. 20-1 at 15-17; ECF No. 33 at 7-8. Plaintiff's subsequent briefing focused on the Local Determination's definition of "severe and chronic" lymphedema and the conservative therapy trial requirements. *See* ECF No. 37 at 3. The Magistrate Judge's Report and Recommendation considered and rejected these bases for jurisdiction under section 1395ff(f)(3). ECF No. 47 at 12-17.

Plaintiff's Objection to the Report and Recommendation, however, addresses *only* the conservative therapy trial requirements. ECF No. 49 at 4-5. Indeed, Plaintiff explicitly states that he is "not asking this Court to make a determination regarding the meaning of 'severe and chronic lymphedema,' as the Report and Recommendation suggests." *Id.* at 5. Plaintiff also recognized that the only issue before the Court was whether "the Court has jurisdiction to entertain this challenge to the [Local Determination]." *Id.* at 2. The Court should therefore consider Plaintiff's other challenges to the Local Determination to be abandoned or conceded. *See* Order at 28-29.

Consistent with the procedural history, the Court's Order reviewed the Report and Recommendation "that this Court grant Defendants' motion since this Court lacks subject matter jurisdiction over Mr. Greenwald's claims." *Id.* at 2; *see also id.* at 18 ("Mr. Greenwald raises objections only as to Magistrate Judge Meriweather's findings on jurisdiction under 42 U.S.C. § 1395ff(f)(3)."). The Order *only* discusses the conservative therapy trial requirements and does not identify any other conflict between the National Determination and Local Determination. *Id.* at 22-24. The Order concludes by rejecting the portion of the Report and Recommendation "finding that there is no jurisdiction under 42 U.S.C. § 1395ff(f)(3)." *Id.* at 29. Notably, the Order neither holds that the entire Local Determination is invalid nor instructs CMS to withdraw the entire Local Determination.

4

Because the only issue before the Court was subject matter jurisdiction, briefing on the merits has been stayed, and Plaintiff has abandoned all bases for jurisdiction other than the conservative therapy trial requirements, the Order plainly did not constitute a final ruling on the merits invalidating the entire Local Determination.

**II.     PLAINTIFF'S ASSERTION THAT CERTAIN OBJECTIONABLE LANGUAGE IN THE LOCAL DETERMINATION RENDERS THE ENTIRE LOCAL DETERMINATION INVALID IS UNFOUNDED**

Under pretense of requesting clarification, Plaintiff asks the Court to take the unprecedented step of determining that the presence of any objectionable language in a Local Determination renders the entire Local Determination invalid. Plaintiff has not (and cannot) cite to any case in support of that unfounded proposition.

Under the severability doctrine, any invalid language in Local Determination L33829 should be removed while the remainder of the Local Determination remains in place. In *Seila Law LLC v. Consumer Finance Protection Bureau*, 140 S. Ct. 2183 (2020), the Supreme Court noted that "Congress would prefer that we use a scalpel rather than a bulldozer in curing the constitutional defect we identify today." *Id.* at 2210-11. The Court also explained the history of the long-standing severability doctrine:

> It has long been settled that "one section of a statute may be repugnant to the Constitution without rendering the whole act void." *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900) (quoting *Treasurer of Fayette Cty. v. People's & Drovers' Bank*, 25 N.E. 697, 702 (1890)). Because a "statute bad in part is not necessarily void in its entirety," "[p]rovisions within the legislative power may stand if separable from the bad." *Dorchy v. Kansas*, 264 U.S. 286, 289–290 (1924).

Accordingly, a court tries "to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010) (internal quotation marks omitted). Even absent an explicit severability clause, the "traditional" rule is that "the unconstitutional provision must be severed unless the statute

created in its absence is legislation that Congress would not have enacted." *Seila Law*, 140 S.Ct. at 2209 (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987)). Plaintiff identifies nothing in section 1395ff that indicates Congress's intent to abandon the severability doctrine.[1]

Where, as here, an agency determination is at issue, "[w]hether an administrative agency's order or regulation is severable . . . depends on the issuing agency's intent." *Davis Cnty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997) (citation omitted). When analyzing whether an agency action is severable, courts consider whether the parts of the action are "intertwined" or whether "they operate entirely independently of one another." *Id.* In particular, courts examine the purpose of the agency's action and whether the action "sensibly serve[s] the goals for which it was designed" without the severed portion. *MD/DC/DE Broads. Ass'n v. FCC*, 253 F.3d 732, 734 (D.C. Cir. 2001).

As discussed further in Defendants' Motion to Dismiss, Local Determinations are developed by considering medical literature, the advice of local medical societies and medical consultants, public comments, and comments from the provider community. ECF No. 27-1 at 5. Local Determinations are only issued after Medicare Administrative Contractors (also known as "MACs") follow detailed procedures, including engaging in a comment-and-notice period, soliciting feedback and recommendations from the medical community, and presenting the policy in meetings of stakeholders. *Id.* at 5-6. Contrary to Plaintiff's suggestion, the issuance of a Local Determination is no small task, and issuing a new Local Determination in every instance

---

[1] Plaintiff's assertion that an explicit severability clause is necessary for the severability doctrine to apply would reverse Supreme Court law. P. Mtn. at 6; *see Alaska Airlines*, 480 U.S. at 686 ("In the absence of a severability clause, however, Congress' silence is just that—silence—and does not raise a presumption against severability.").

6

where an aspect of the Local Determination is deemed invalid, would create an unnecessary burden on Defendants.  *See* Pl. Mot. at 5 n.1.

Although there are no regulations concerning challenges arising under section 1395ff(f)(3), the regulations concerning similar challenges to National and Local Coverage Determinations before the Appeals Board express the agency's preference for severance.  *See* 42 C.F.R. Part 426 (implementing 42 U.S.C. § 1395ff(f)(1) and (f)(2)).  Notably, these regulations instruct the Administrative Law Judge (or "ALJ") to conduct a "review of a challenged provision (or provisions) of" a Local Determination.  42 C.F.R. § 426.300(a).  An aggrieved party must identify the "specific provision (or provisions) of the [Local Determination] adversely affecting" him or her.  *Id.* § 426.400(c)(4).  Accordingly, a Medicare Administrative Contractor may revise a Local Determination "under review to remove or amend the [Local Determination] provision listed in the complaint through the reconsideration process before the date the ALJ issues a decision regarding that" Determination.  *Id.* § 426.420(b).  Once the ALJ receives notice that the Medicare Administrative Contractor has revised the Local Determination to completely remove the provision in question, "the ALJ must dismiss the complaint."  *Id.* § 426.420(e)(1).

If the case is decided on the merits, the ALJ's decision must include a "determination that the provision of the" Local Determination is valid or invalid.  *Id.* § 426.450(a).  If the ALJ finds that the "provision or provisions of the" Local Determination are invalid, and no appeal is filed, then the claim of the party that challenged the Local Determination must be adjudicated "without using the provision(s) of the [Local Determination] that the ALJ found invalid."  *Id.* § 426.460(b).  In sum, the regulatory scheme conclusively establishes the agency's position that

7

a successful Local Determination challenge should result in the removal of the invalid provisions rather than withdrawal of the entire Local Determination.[2]

Given that the agency intended Local Determinations to be severable, the only remaining issue is whether the conservative therapy trial requirements in Local Determination L33829 are intertwined with the entire Local Determination. The Local Determination, however, addresses several independent topics under separate headings. In addition to the conservative therapy trial requirements, the Local Determination addresses the following topics (in order):

- Requirements for prescriptions for pneumatic compression devices
- The definitions of edema, primary lymphedema, secondary lymphedema, chronic venous insufficiency, and peripheral artery disease
- Coding for pneumatic compression devices
- Requirements for coverage of pneumatic compression devices for lymphedema
- Coverage for chronic venous insufficiency with venous stasis ulcers
- Various requirements for coverage where lymphedema extends onto the chest, trunk, and/or abdomen
- Coverage for peripheral artery disease
- Coverage for deep venous thrombosis prevention
- Coverage for pneumatic compression device related accessories
- Pneumatic compression device coding selection

---

[2] Although Plaintiff posits that a federal court should not serve as "editor" of a Local Determination (Pl. Mot. at 5), a Board decision on a coverage determination challenge "constitutes a final agency action and is subject to judicial review." 42 C.F.R. § 426.490. Because federal district courts must consider whether to revise Local Determinations when hearing appeals from challenges under section 1395ff(f)(1) and (f)(2), they are certainly equipped to perform the same task when a plaintiff files suit directly in federal court under section 1395ff(f)(3).

- Requirements for physician orders
- Various documentation requirements

*See* Ex. A.  These topics and the various requirements in the Local Determination—including those for a four-week trial for lymphedema—are severable from the specific language that the Court invalidated, as reflected in the redline attached as Exhibit A.  Because the remainder of the Local Determination can "function sensibly without the stricken portion," the Local Determination should not be declared invalid in its entirety.  *MD/DC/DE Broads. Ass'n*, 253 F.3d at 734.

Meanwhile, Plaintiff's cited cases are inapposite.  In particular, *National Mining* held that, if a plaintiff's challenge to a regulation is successful, the regulation should be vacated, rather than merely forbidding its application to a particular plaintiff.  *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); Pl. Mot. at 6.  Likewise, Defendants have agreed to remove the language the Court invalided from the Local Determination, as opposed to arguing that such language should remain applicable to all claimants other than Plaintiff Greenwald.

In addition, a case concerning when one statute can repeal another statute by implication is irrelevant, because only the severability of a single agency determination—L33829—is at-issue.  Pl. Mot. at 5-6 (citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 65 (D.D.C. 2006)).  Cases concerning deference are also irrelevant, because this is an issue of severability – not deference to a Local Determination.  Pl. Mot. at 6.

**III. TO THE EXTENT THE COURT GRANTS CLARIFICATION, IT SHOULD FIND THAT DEFENDANTS' COMPLIANCE WITH THE ORDER WOULD FULLY RESOLVE THIS ACTION**

In accordance with the Court's Order, Defendants have agreed to remove the objectionable language concerning the conservative therapy trial requirements, retroactive to the

9

date of the Order. *See* Ex. A. Defendants have also agreed to cover Plaintiff's instant claim for a pneumatic compression device (collectively with Exhibit A, the "revision actions"). Although Defendants hoped to accomplish the revision actions by settlement to avoid further litigation, Defendants are prepared to undertake the revision actions to ensure compliance with the Order and bring this matter to a close.

As the Order notes, Plaintiff's standing under section 1395ff(f)(3) requires "some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 26. As discussed above, Plaintiff's *sole* basis for jurisdiction under section 1395ff(f)(3) relates to the conservative therapy trial requirements, and Plaintiff alleges that the conservative therapy trial requirements were the *sole* basis for denying his claim. *See* ECF No. 26 (Am. Compl.) ¶¶ 51, 55-57. Accordingly, "Mr. Greenwald's past injury of having to pay out of pocket by ensuring he is not in the future denied a [pneumatic compression device] for his ongoing chronic lymphedema because of an invalid" Local Determination would be fully redressed by the revision actions. Order at 27. Because Plaintiff has abandoned his other challenges to the Local Determination, which, in any event, have no alleged relationship to the denial of his claim or the denial of any hypothetical future claim, he neither has jurisdiction to raise nor a concrete stake in any other issue. *See* Order at 26-27 (discussing the concrete injury requirement); *Porzecanski v. Azar*, 943 F.3d 472, 483 (D.C. Cir. 2019) (foreclosing a claim for future benefits); *see generally Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020) ("We of course lack power under Article III to decide an issue when the question sought to be adjudicated has been mooted by subsequent developments.") (citation omitted).

Accordingly, to the extent that the Court is inclined to clarify the Order, it should find

that undertaking the revision actions would finally resolve this matter.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Clarification of this Court's June 7, 2022 Memorandum Opinion and Order should be denied.  Alternatively, the Court should clarify that, by undertaking the revision actions, Defendants would in compliance with the Order and this matter would be fully resolved.

Dated: October 7, 2022
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      /s/ *Kartik N. Venguswamy*
      KARTIK N. VENGUSWAMY, D.C. Bar #983326
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-1790

ERIC S. WOLFISH
Special Assistant United States Attorney

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2022, I caused a true and correct copy of the foregoing answer to be served on all counsel of record via the Court's CM/ECF system.

      /s/ *Kartik N. Venguswamy*
Kartik N. Venguswamy
Assistant United States Attorney