IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------------------x
                                           :

MICHAEL GREENWALD,                            :

                   Plaintiff,                       :      Civil Action No.
                                           :      1:17-cv-00797-EGS

v.                                           :

XAVIER BECERRA,                             :
Secretary of the United States            :
Department of Health and Human Services, *et al.*,  :

                 Defendants.                   :
---------------------------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF THE MOTION FOR CLARIFICATION
OF THIS COURT'S JUNE 7, 2022 MEMORANDUM OPINION AND ORDER**

**Introduction**

    Plaintiff, Michael Greenwald, filed this motion for clarification of the Court's June 7, 2022 Memorandum Opinion and Order seeking to clarify this Court's plain declarative statement that a Medicare Local Coverage Determination ("LCD") issued by a private contractor and a Medicare National Coverage Determination issued by the Secretary of Health and Human Services ("Secretary") on the same subject "impermissibly conflict, rendering LCD 33829 **invalid** and providing this Court with jurisdiction under § 1395ff(f)." ECF 52 at 24 (emphasis added). The current Motion turns on the meaning of the word "invalid", and there is no reason why it should not be given its plain meaning and prohibit the Secretary from relying on LCD L33829 in any matter involving Medicare coverage for pneumatic compression devices.

In his opposition to this Motion for Clarification, the Secretary has not denied that there is a need for clarification. In fact, the Secretary has asked this Court to approve a revised version of the invalidated LCD rather than withdrawing the LCD. The Secretary now asks the Court to adopt a highly restrictive position that lacks any support and is inconsistent with the plain language of 42 U.S.C. § 1395ff(f). Accordingly, the Secretary's position is untenable. Instead, the Court should reject it and make clear that clarify that that Local Coverage Determination L33829 is entirely void. There is nothing precluding the Secretary from either relying on the existing NCD for pneumatic compression devices, reverting back to the LCD for pneumatic compression devices that preceded L33829, or starting the process of developing a compliant LCD.

## I. THE PLAIN LANGUAGE OF THE COURT'S JUNE 6, 2022 MEMORANDUM OPINION AND ORDER INVALIDATED LOCAL COVERAGE DETERMINATON L33829 IN ITS ENTIRETY

The plain language of the Court's June 6, 2022 Memorandum Opinion and Order was straightforward and rested on two basic points. First, there was no dispute that if LCD 33829 conflicted with the Medicare National Coverage Determination for Pneumatic Compression Devices ("NCD"), the LCD is invalid. ECF 52 at 19-20. Second, the Court determined that "the LCD and NCD impermissibly conflict, rendering LCD L33829 invalid and providing this Court with jurisdiction under § 1395ff(f)." *Id.* at 24. As noted previously, the plain meaning of the word "invalid" is that the LCD has no authority whatsoever. ECF 56 at 4; *see also* Webster's New World Dictionary at 768 (1960 ed.)(defining invalid as "not valid; having no force; null or void.")

In this case, the plain meaning of the word "invalid" should control. *See, e.g., Sebelius v. Cloer,* 569 U.S. 369, 376 (2013) ("As in any statutory construction case, we start, of course, with

the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." (internal quotation marks, alterations, and citations omitted)); *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011) ("When a statute does not define a term, we typically give the phrase its ordinary meaning." (internal quotation marks omitted)); *Flores-Figueroa v. United States,* 556 U.S. 646, 657 (2009) ("[W]e cannot find indications in statements of [the statute's] purpose or in the practical problems of enforcement sufficient to overcome the ordinary meaning, in English or through ordinary interpretive practice, of the words that [Congress] wrote."); *Equal Rights Ctr. v. Uber Techs., Inc.*, 525 F. Supp. 3d 62, 83 (D.D.C. 2021).   Yet, the Secretary urges this Court to abandon this fundamental principle without any authority.  ECF 57 at 3-5.  Section 1395ff(f) does not contain its own definition of invalid or what must occur once a court determines that a LCD is invalid, and when Congress amended Section 1395ff in 2000 to add a provision for challenging Medicare Local Coverage Determinations, it did not specify that the word invalid had any meaning other than its ordinary meaning. *See* H. Conf. Rep. 106-1033 at 896 (2000).

      The Secretary simply seeks to revive the LCD in several ways, all without any authority. Although the Secretary alleges here that the Plaintiff's only challenge to the LCD focuses on the four-week trial of conservative therapy, Plaintiff has never abandoned the six specific provisions of the LCD that impermissibly conflict with the NCD for pneumatic compression devices. *See* ECF 26 at ¶¶ 33-46, ECF 29 at 13-17, and ECF 30 at 13-17.  The Secretary's statement that Mr. Greenwald did not ask the Court to define severe and chronic lymphedema is hardly an abandonment of the allegations in the complaint; that statement was made to rebut the erroneous allegation made by the Secretary that Mr. Greenwald was asking the Court to approve his individual claim for Medicare reimbursement. In fact, the next sentence reiterates that this case

has always been focused on the impermissible conflict between the NCD and LCD. ECF 57 at 4; ECF 49 at 5.

Similarly, the Secretary misconstrues the Court's statement regarding the allegations in Count IV of the Complaint, which relied on 42 U.S.C. § 1395ff(i); the only matter that was conceded was the standing allegation based on the mediation process for Local Coverage Determinations; this is entirely independent of the specific conflicts between the NCD and the LCD. ECF 52 at 28-29. As a result, this action did not dismiss Plaintiff's allegations that the LCD is inconsistent with the NCD or render them abandoned.

The Secretary also misconstrues the impact of the Magistrate Judge's Report and Recommendation. ECF 57 at 3-4. The fact that the Magistrate Judge addressed only the language in the LCD that refers to a four-week trial of conservative therapy cannot be transformed into a dismissal or abandonment of the remaining allegations in the Complaint. Plaintiff properly objected to the findings and recommendations made in the Report and Recommendation. That Report and Recommendation that recommended that the complaint be dismissed was not adopted for the points involving 42 U.S.C. § 1395ff(f)(3), which are all of the six elements of the LCD that conflict with the NCD. Accordingly, these points have not been dismissed or abandoned. There was no specific finding that the only basis for this dispute is the four-week trial of conservative therapy.

## II.   THE LCD IS INVALID IN ITS ENTIRETY, AND THE SECRETARY'S ARGUMENTS ARE INAPPOSITE

The Secretary's argument that the LCD can be edited and revised by this Court is entirely without merit. The LCD that was challenged in this dispute is neither a statute nor a regulation; it is a policy that was developed and published by a private contractor. Yet, the Secretary would

elevate that LCD to the same level as a statute or a regulation without any authority to support this contention.

The Secretary's argument rests on the unfounded presumption that the Court should merely sever the objectionable language from the current LCD rather than invalidating the LCD and remanding the matter to the Secretary. As noted above, Section 1395ff(f)(3) does not instruct a court to do this. In support of this contention, the Secretary cites to caselaw that involved unconstitutional provisions of statutes enacted by Congress. ECF 57 at 5-9. Those cases acknowledged that the judiciary respects the actions of the legislature as a co-equal branch of government, and avoids placing the judiciary in the role of a super-legislature that can re-write enacted laws.

This case has nothing to do with the cases cited by the Secretary. The LCD is not a statute, but a policy published by a private contractor. It does not qualify for deference and may be disregarded by Administrative Law Judges. *See, e.g.* 42 C.F.R. § 405.1062(a)(LCDs are not binding on Administrative Law Judges). The Secretary has not cited to any authority for the proposition that a LCD is also subject to severability based on the same sort of deference accorded to acts of Congress. Nor can the Secretary point to any language in Section 1395ff(f) or its legislative history, let alone the Social Security Act, that contains a severability clause that applies here.

The Secretary's reliance on the discussion of severability in *Davis Cnty. Solid Waste Management v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997) is simply not relevant in this case, which was brought under 42 U.S.C. §1395ff(f)(3) and authorizes this Court to declare that a LCD is invalid. ECF 57 at 6. Instead, the Secretary pivots and cites to a different paragraph in the statute, Section 1395ff(f)(2), which established a separate avenue for challenging a LCD

5

through the Medicare administrative appeals process when there are mixed questions of fact and law. While the Secretary may argue that the procedures to be followed when a LCD is challenged under Section 1395ff(f)(2) may allow for severability under the Secretary's regulations, this ignores the fact that Congress did not include any provision for severability in Section 1395ff(f)(3). It is well established that a Court has an obligation to refrain from reading language into a statute when Congress does not use that language. *See Keene Corp. v. United States,* 508 U.S. 200, 208 (1993)("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")(*quoting Russello* v. United States, 464 U.S. 16, 23 (1983) (citation omitted).

    Nor can the Secretary succeed by alleging that if the LCD is invalid it will place an unreasonable burden on its contractors. ECF 57 at 6-7. One of the tasks for which the Secretary compensates Medicare Administrative Contractors is to develop policies, so the MAC would simply be doing the job for which it is paid public funds. In any event, the argument that invalidating the LCD would be a burden is completely illusory. The Medicare National Coverage Determination for pneumatic compression devices has always been in effect since this case was filed, and all that the MAC has to do is to make the LCD conform to the NCD in all relevant parts or withdraw it and rely only on the binding NCD. In the alternative, the MACs could simply reinstate the Local Coverage Determination for pneumatic compression devices that preceded LCD 33829.[1] In any event, the Secretary is well aware that before this action was filed many interested parties notified the MAC of the individual points where the draft that was ultimately adopted as LCD L33829 conflicted with the NCD. ECF 26 at ¶¶ 33-46, ECF 29 at

---

[1] *See* Local Coverage Determination L11492, Pneumatic Compression Devices (effective Oct. 1, 1993), attached as Exhibit 1.

13-17 and Attachment 3 (Declaration of John F. Lee, M.D.), ECF 30 at 13-17. Unfortunately, the MAC refused to address these conflicts when given the opportunity to do so. *Id.* If the Opinion and Order is clarified to invalidate the LCD in its entirety, there is nothing precluding the MACs from creating a new draft LCD for public review and comment consistent with the findings of this Court.

### III. THE SECRETARY'S PROPOSED REVISION OF THE LCD DOES NOT IMPLEMENT A DETERMINATION THAT THE LCD IS INVALID BECAUSE THE SECRETARY'S PROPOSED REVISION CONTINUES TO CONFLICT IMPERMISSIBLY WITH THE NCD FOR PNEUMATIC COMPRESSION DEVICES

Notwithstanding its opposition to this motion for clarification, the Secretary concedes that this Court ruled that the LCD is invalid. However, it then seeks to have the Court endorse the narrowest possible reading of Section 1395ff(f)(3) by asking the Court to approve its revision of the LCD, which would only remove the conflicting language requiring multiple four-week trials of conservative therapy before a pneumatic compression device could be covered under Medicare. ECF 57 at 9-11 and Exh. A. This fails to address the other conflicting provisions in the flawed LCD.[2] As described above, the Secretary's goal here is to undercut the Court's Opinion and Order and the plain language of Section 1395ff(f)(3). The Secretary's position would result in the Court conforming to the rules the Secretary has adopted for challenges brought through the administrative hearing process set out in Section 1395ff(f)(2) without any indication that Congress intended this result.

The Secretary's narrow proposal here is inconsistent with his past practice. Following the decision of this Court in *Hays v. Leavitt*, 583 F. Supp. 2d 62 (D.D.C. 2008), *aff'd Hays v.*

---

[2] For reference, Plaintiff has prepared a redline version of LCD 33829 that does conform to the NCD. *See* Exhibit 2.

7

*Sebelius*, 589 F.3d 1279 (D.C. Cir. 2009), which was brought under Section 1395ff(f) and invalidated the Medicare Local Coverage Determinations for nebulizer drugs that capped Medicare reimbursement at the least costly alternative to the prescribed drug, the Secretary responded by withdrawing those LCDs completely.  *See* NHIC Corp., DME MAC Jurisdiction A Resource, March 2011 at 67-68, available at: https://med.noridianmedicare.com/documents/6547796/26100945/DME+A+2011+March+Bulletin.pdf ("CMS has instructed contractors that they may no longer make partial payment for claims based on a "least costly alternative" (LCA) determination."); *see also* Department of Health and Human Services, Office of Inspector General, Least Costly Alternative Policies: Impact On Prostate Cancer Drugs Covered Under Medicare Part B at 5, available at: https://oig.hhs.gov/oei/reports/oei-12-12-00210.pdf (following the *Hays* decision, "[i]n April 2010, CMS directed contractors to discontinue all LCA [Least Costly Alternative] policies for Part B drugs.").  Accordingly, the Secretary's new and restrictive approach is an extreme departure from his past practice without any explanation for that departure.

The Secretary's position here also overlooks an important fact in this case that undermines his position that invalidating LCD 33829 only requires that a few words be excised from the text.  Since the parties agree that a LCD cannot restrict a NCD, the Secretary's position here conflicts with that understanding by allowing the LCD to remain with language that still conflicts with the NCD and restricts it for the reasons set out in the amended complaint and in Plaintiff's moving papers.  Equally important, the Secretary's position ignores the fact that invalidating all of LCD L33829 still leaves the NCD for pneumatic compression devices

completely intact. Therefore, the Secretary would suffer no harm at all if the LCD were rescinded in its entirety.[3]

## CONCLUSION

For all of the reasons described in this memorandum, Plaintiff respectfully requests that this Court clarify that the term "invalid" in 42 U.S.C. § 1395ff(f)(3) as interpreted by this Court in its June 7, 2022 Opinion and Order means that Medicare Local Coverage Determination L33829 is invalid in its entirety and cannot be applied in any way by the Secretary.

Dated: October 14, 2022

                                                        Respectfully Submitted,

                                                        __/s/ Robert Wanerman_____
                                                        Robert Wanerman
                                                        D.C. Bar No. 456895
                                                        Epstein Becker & Green, P.C.
                                                        1227 25th Street, N.W., Suite 700
                                                        Washington, D.C. 20037
                                                        T: (202) 861-1885
                                                        F: (202) 861-3585
                                                        rwanerman@ebglaw.com

---

[33] The Secretary's position further raises the potential for burdensome litigation. If a LCD is invalid because it conflicts with a NCD, but only a few words were excised as a result of a successful challenge, then multiple individual litigants would be forced to challenge each element of a non-compliant LCD in multiple filings. This would burden court dockets and create a cumbersome process that could be handled more efficiently by remanding the invalid LCD to the Secretary.