UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL GREENWALD,<br><br>    *Plaintiff*,<br><br>v.<br><br>XAVIER BECERRA, *et al.*,<br><br>    *Defendants*. | Civil Action No. 17-797 (LLA) |

**MEMORANDUM OPINION**

This matter is before the court on Plaintiff Michael Greenwald's motion for summary judgment, ECF No. 63, and Defendants'—Xavier Becerra, Secretary of Health and Human Services, and Seema Verma, Administrator of the Centers for Medicare and Medicaid Services— motion to dismiss the case as moot, ECF No. 65.  For the reasons explained below, the court will grant Defendants' motion and dismiss the case as moot.

**I.     Background**

**A.     Statutory Background**

The Medicare program provides health benefits to "nearly 60 million aged or disabled Americans." *Azar v. Allina Health Servs.*, 587 U.S. 566, 569 (2019).  The program is divided into "parts," that the Secretary of Health and Human Services ("the Secretary" of "HHS") administers through the Centers for Medicare and Medicaid Services ("CMS").  *Row 1 Inc. v. Becerra*, 92 F.4th 1138, 1141 (D.C. Cir. 2024).  Part A covers institutional health care services, like hospital inpatient procedures.  42 U.S.C. § 1395d.  Part B covers outpatient care, medical professional services, and some durable medical equipment.  *Id.* § 1395k.  Part C functions as a gap-filler,

providing benefits to individuals who choose to receive additional coverage from private health insurance companies. *See id.* §§ 1395w-21 to -28.

Medicare "covers only items and services 'reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.'" *Row 1, Inc.*, 92 F.4th at 1141 (quoting 42 U.S.C. § 1395y(a)(1)(A)). CMS administers this standard by issuing both formal regulations and non-binding guidance. *See* 42 U.S.C. §§ 1395hh, 1395ff(a)(1). CMS has a unique tool available to it in the administration of Medicare: a national coverage determination ("NCD"). NCDs are legally binding "with respect to whether or not a particular item or service is covered nationally" by Medicare. *Id.* § 1395ff(f)(1)(B).

CMS further delegates its authority to Medicare Administrative Contractors ("MACs"), which administer health benefits by "processing claims and administering benefits" within a particular geographic jurisdiction.[1] *Row 1, Inc.*, 92 F.4th at 1141; 42 U.S.C. § 1395kk-1. MACs are bound by CMS's rules and NCDs. 42 U.S.C. § 1395kk-1(a)(4). MACs can issue their own Local Coverage Determinations ("LCDs"), which clarify the contractor's interpretation of relevant authorities and specify whether particular health benefits are reasonable and necessary such that they will be covered by the Act. *See id.* § 1395ff(f)(2)(B) (defining LCDs as "a determination by a [MAC] respecting whether or not a particular item or service is covered on an intermediary- or carrier-wide basis"). "Notably, LCDs only apply within the authoring MAC's assigned region." *Cal. Clinical Lab'y Ass'n v. Sec'y of Health & Hum. Servs.*, 104 F. Supp. 3d 66, 71 (D.D.C. 2015).

---

[1] *See* Ctrs. for Medicare & Medicaid Servs., *What's a Mac*, https://perma.cc/3MLT-3YYD (last visited July 31, 2024) (explaining that MACs are private health care insurers that "serve as the primary operation contact between [] Medicare . . . and [] health care providers enrolled in the program.").

They do not bind any other MAC and they do not bind any higher authority—i.e. CMS or HHS. *See id.*; 42 U.S.C. § 1395ff(c)(3)(B)(ii).

CMS requires MACs to follow particular procedural guidelines when developing LCDs, including notice and comment. *See generally* Ctr. for Medicare & Medicaid Servs., Medicare Program Integrity Manual, ch. 13 (2019) ("CMS Manual").[2] MACs publish proposed LCDs and allow forty-five days for public comment. *Id.* § 13.2.4.2. MACs must address "all comments received" and publish their responses with the final LCD. *Id.* § 13.5.6.

Health benefits for individuals are typically covered through the following process. A Medicare beneficiary (or a healthcare provider acting on the beneficiary's behalf) submits a claim to the relevant MAC. 42 U.S.C. § 1395kk-1(a)(1) to (4). The MAC then determines whether the service or item is reasonable and necessary and thus covered by Medicare. *See id.* "[I]f coverage is initially denied by a MAC, a Medicare beneficiary may appeal the MAC determination to an administrative law judge ('ALJ') housed within the Secretary's Office of Medicare Hearings and Appeals." ECF No. 47, at 4 (citing 42 U.S.C. §§ 1395ff(b)(1)(E), (d)(1)(A)); *see Am. Hosp. Ass'n v. Burwell*, 76 F. Supp. 3d 43, 46 (D.D.C. 2014), *rev'd on other grounds*, 812 F.3d 183 (D.C. Cir. 2016) (describing this process). If the beneficiary is still dissatisfied, there is another layer of review before the Departmental Appeals Board. *Cal. Clinical Lab'y Ass'n*, 104 F. Supp. 3d at 72 (citing 42 C.F.R. § 405.904(b)).

Plaintiffs seeking to challenge LCDs on "purely legal grounds" may utilize an alternative procedure, bypassing the administrative process in favor of immediate judicial review. *Id.* at 72 (citing 42 U.S.C. § 1395ff(f)(3)). A plaintiff may proceed "without otherwise exhausting other administrative remedies" under Section 1395ff(f)(3) when there are "no material issues of fact in

---

[2] *Available at* https://perma.cc/25F3-QTX9 (last visited July 31, 2024).

dispute" and "the only issue of law is . . . that a regulation, determination, or ruling by the Secretary is invalid." *Id.*

### B.     Factual Background

The court draws the following facts, accepted as true, from Plaintiff's complaint and the parties' briefing. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); *see Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

#### 1.     Mr. Greenwald's Diagnosis and Care Plan

Mr. Greenwald is a Medicare beneficiary. ECF No. 26 ¶ 13. In 2014, he was diagnosed with lymphedema, a chronic medical condition that results in an accumulation of fluid in subcutaneous tissues. *Id.* ¶¶ 1, 14. His physician initiated a treatment plan that included instructions to wear compression stockings, to elevate the affected limbs, and to exercise within reason. *Id.* ¶ 48. Mr. Greenwald returned for a follow-up visit ten days later, and his physician determined that his symptoms had not improved despite compliance with the plan of care. ECF No. 63-1, at 14.

Mr. Greenwald's symptoms persisted. ECF No. 26 ¶ 49. In 2016, his physician determined that conservative therapy had failed and recommended that Mr. Greenwald start a new treatment—intermittent pneumatic compression—that required the purchase of a pneumatic compression device ("PCD"), a type of durable medical equipment that is sometimes covered by Medicare.[3] *Id.* ¶ 49; ECF No. 63-1, at 6. PCDs "consist of an inflatable garment" that is affixed

---

[3] Physicians use PCDs to address many other circulatory conditions, including chronic venous insufficiency with venous stasis ulcers, periphery artery disease, and deep vein thrombosis. ECF No. 63-1, at 6.

4

to a limb "and an electrical pneumatic pump that fills the garment with compressed air." ECF No. 63-1, at 6. The PCD stimulates fluid circulation in the affected parts of the body by intermittently inflating. ECF No. 52, at 3-4.

Mr. Greenwald's physician wrote a prescription for a PCD along with specific settings and instructions for use. ECF No. 63-1, at 14-15. A durable medical equipment supplier filled the prescription in August 2016 and submitted Mr. Greenwald's claim for coverage to the relevant MAC. ECF No. 26 ¶¶ 52, 54-55. Prior to submission, Mr. Greenwald signed an Advance Beneficiary Notice form, in which he acknowledged in writing that, if Medicare denied coverage of the PCD, he would be responsible for payment. *Id.* ¶ 54.

### 2. Regulations Governing PCDs

Coverage of PCDs nationally is governed by a NCD and, in Mr. Greenwald's case, also by a regional LCD. In pertinent part, the NCD provides that

> Pneumatic compression devices are covered only when prescribed by a physician and when they are used with appropriate physician oversight, i.e., physician evaluation of the patient's condition to determine medical necessity of the device, assuring suitable instruction in the operation of the machine, a treatment plan defining the pressure to be used and the frequency and duration of use, and ongoing monitoring of use and response to treatment.
>
> The determination by the physician of the medical necessity of a pneumatic compression device must include:
>
> 1. The patient's diagnosis and prognosis;
>
> 2. Symptoms and objective findings, including measurements which establish the severity of the condition;
>
> 3. The reason the device is required, including the treatments which have been tried and failed; and
>
> 4. The clinical response to an initial treatment with the device.
>
> The clinical response includes the change in pretreatment measurements, ability to tolerate the treatment session and

> parameters, and ability of the patient (or caregiver) to apply the device for continued use in the home.
>
> The only time that a segmented, calibrated gradient pneumatic compression device (HCPCs code E0652) would be covered is when the individual has unique characteristics that prevent them from receiving satisfactory pneumatic compression treatment using a nonsegmented device in conjunction with a segmented appliance or a segmented compression device without manual control of pressure in each chamber.

Ctrs. for Medicare & Medicaid Servs., Nat'l Coverage Determination for Pneumatic Compression Devices, Pub. No. 100-3 § 280.6 (eff. Jan. 14, 2002) ("NCD 280.6").[4]

For many years, the pertinent LCD was identical to the NCD.  ECF No. 63-1, at 8.  In 2016, however, a new LCD was put in place.  Mr. Greenwald states that the 2016 LCD (LCD L33829) differs from the NCD because:

- The LCD[] limit[s] Medicare coverage to "severe and chronic lymphedema", which is not the case with the NCD;

- When a trial period of conservative therapy is a prerequisite for PCD coverage, the NCD does not require multiple four-week trials of conservative therapy, which may be imposed under the LCD[]

- Although the NCD allows for Medicare coverage if the beneficiary's treating physician determines that after a four-week trial of conservative therapy "significant symptoms [of lymphoma] remain," the LCD removes this as a coverage pathway;

- The LCD[] contain[s] additional prerequisites for coverage for lymphedema treatment;

- The LCD[] add[s] new prerequisites for coverage for chronic venous insufficiency with venous stasis ulcers;

- In order for segmented pneumatic compression devices with gradient pressure to be covered under Medicare, the LCD[] add[s] new prerequisites for coverage requiring that the lymphedema extend into the chest, trunk, or abdomen, thus eliminating Medicare

---

[4]*Available at* https://perma.cc/Q5QP-GD9D (last visited July 31, 2024).

- coverage for these devices when prescribed for patients with limb-only lymphedema, regardless of severity;

- The LCD[] state[s] for the first time that "manual lymphatic drainage is a key component of conservative treatment as is appropriate medication treatment when there is concurrent congestive failure[sic]."

- The LCD[] add[s] a new exclusion from Medicare coverage for PCDs when used for peripheral artery disease or for deep venous thrombosis prophylaxis; and

- The LCD[] allege[s] that they contain references to clinical literature, when in fact the only references are to other health plan policies.

ECF No. 63, at 10; *see* ECF No. 26 ¶ 42.

Mr. Greenwald's claim for the PCD was denied on the grounds that the PCD prescription was not reasonable and necessary as defined by the 2016 LCD. *Id.* ¶¶ 54-55. Mr. Greenwald authorized the supplier of the PCD to appeal the initial rejection, which was again denied by the MAC. *Id.* ¶ 56. Specifically, the MAC noted that Mr. Greenwald had not complied with the LCD's requirement for a four-week trial of conservative therapy. *Id.* The MAC stated that "[o]nly where no significant improvement has occurred in the most recent four weeks and coverage criteria above are still met[] may lymphedema be considered unresponsive to conservative therapy[] and coverage for a PCD considered." ECF No. 63-1, at 16. Mr. Greenwald paid the full cost of the PCD out of pocket. ECF No. 26 ¶¶ 47, 63.

### C.     Procedural History

Mr. Greenwald brought this civil action in April 2017. ECF Nos. 1, 26. He elected to bring this suit directly in federal district court as authorized by statute, *see* 42 U.S.C. § 1395ff(f)(3), rather than exhausting his administrative remedies, ECF No. 26 ¶ 11; ECF No. 47, at 6. Accordingly, this "suit is not an appeal of Mr. Greenwald's individual coverage

determination, but a claim that LCD L33829 is invalid as a general matter, whether applied to Mr. Greenwald or to a stranger." ECF No. 47, at 6.

Broadly, Mr. Greenwald argues that the 2016 LCD imposed new substantive requirements for coverage of PCDs and, as a result, Defendants were required to abide by rulemaking procedures established in the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and Social Security Act, 42 U.S.C. § 1395hh(a)(1-2). ECF No. 26 ¶¶ 58-80. Mr. Greenwald seeks relief in the form of a declaration from this court that the process under which the 2016 LCD was published is arbitrary and capricious, and an order declaring the LCD invalid and directing Defendants to ensure that any new LCD does not conflict with the NCD. *Id.* at 22-23.

Defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. ECF No. 27. Shortly thereafter, Mr. Greenwald moved for summary judgment on his claims. ECF No. 29. The court (Sullivan, J.) stayed "summary judgment briefing pending resolution of defendants' motion to dismiss." Feb. 12, 2018 Minute Order. The court then referred this matter to Magistrate Judge Robin M. Meriweather for full case management. Mar. 30, 2018 Minute Order.

### 1.    Report and Recommendation

Judge Meriweather issued a Report and Recommendation recommending that the court grant Defendants' motion to dismiss for lack of jurisdiction. ECF No. 47. She explained that Mr. Greenwald had invoked the court's jurisdiction under 42 U.S.C. § 1395ff(f)(3), which provides the court with jurisdiction to facially review NCDs and LCDs when two conditions are met: (1) there are "no material issues of fact in dispute" and (2) "the only issue of law is . . . that a regulation, determination, or ruling by the Secretary is invalid." *Id.* § 1395ff(f)(3); *see* ECF No. 47, at 11-17. Judge Meriweather reasoned that the court required additional facts to assess whether the NCD and LCD were in conflict, and that such facts were material. ECF No. 47,

at 13-16. As a result, she concluded that Mr. Greenwald could not invoke Section 1395ff(f)(3) and the court lacked jurisdiction. ECF No. 47, at 13, 15-17. Because Judge Meriweather determined that the court lacked statutory jurisdiction, she did not consider whether Mr. Greenwald had sufficiently established constitutional standing. *Id.* at 9-10.

### 2. The Court's June 2022 Opinion and Order

In June 2022, the court concluded that it had subject-matter jurisdiction under Section 1395ff(f)(3). ECF No. 52. It reasoned that "additional facts or expert opinions" were not necessary because the conflict between the NCD and the 2016 LCD was "evident in the plain language of the text." ECF No. 52, at 23. Specifically, the court identified the two following provisions as in conflict with one another. The NCD stated:

> Pneumatic compression devices are covered in the home setting for the treatment of lymphedema if the patient has undergone a four-week trial of conservative therapy and the treating physician determines that there has been no significant improvement or if significant symptoms remain after the trial. The trial of conservative therapy must include use of an appropriate compression bandage system or compression garment, exercise, and elevation of the limb.

ECF No. 52, at 19 (quoting NCD 280.6). The 2016 LCD, in contrast, stated:

> At the end of the four-week trial, if there has been improvement, then reimbursement for a [pneumatic compression device] is not justified. Where improvement has occurred, the trial of conservative therapy must be continued with subsequent reassessment at intervals at least a week apart. Only when no significant improvement has occurred in the most recent four weeks and the coverage criteria above are still met, may the lymphedema be considered unresponsive to conservative therapy, and coverage for a [pneumatic compression device] considered. CMS' NCD for [pneumatic compression device] (280.6) instructs: "The determination by the physician of the medical necessity of a pneumatic compression device must include . . . symptoms and objective findings, including measurements which establish the severity of the condition."
>
> At a minimum, re-assessments conducted for a trial must include detailed measurements, obtained in the same manner and with

> reference to the same anatomic landmarks, prior to and at the conclusion of the various trials and therapy, with bilateral comparisons where appropriate.

ECF No. 52, at 20 (quoting LCD L33829). The court stated that "the national rule requires on its face only one four-week trial; the local rule might require several, potentially prolonging a patient's discomfort and health complications." *Id.* at 23 (quoting ECF No. 47, at 15). While Judge Meriweather had found that the court would need to know "which symptoms associated with lymphedema and similar circulatory conditions are 'significant,' how their significance is measured, [and] how improvement is documented and weighted" in order to assess whether a conflict existed between the NCD and LCD, ECF No. 47, at 15-16, the court determined that no further information was needed: "[t]he text makes amply clear that individuals who would meet the conservative trial requirements of NCD 280.6 may not satisfy LCD L33829 if they have improvements in their condition within the past four weeks," ECF No. 52, at 23. Accordingly, the court found "that the LCD and NCD impermissibly conflict, rendering [the LCD] invalid and providing this Court with jurisdiction under § 1395ff(f)." *Id.* at 24. The court further concluded that Mr. Greenwald had constitutional "standing to bring this case." *Id.* at 28.[5]

### 3. Mr. Greenwald's Motion to Clarify and the Court's May 2023 Opinion and Order

In May 2023, Mr. Greenwald filed a motion to clarify the court's opinion and order, arguing that the court had invalidated the 2016 LCD "in its entirety," thus requiring the Secretary to "withdraw the LCD completely." ECF No. 56, at 1. Defendants disagreed, arguing that the court's ruling was limited to a finding on subject-matter jurisdiction, as opposed to the merits of Mr. Greenwald's legal challenge. ECF No. 57, at 1. They further proposed that the 2016 LCD

---

[5] The court dismissed Count IV of Mr. Greenwald's complaint for lack of standing. ECF No. 52, at 28-29. Mr. Greenwald did not contest the determination at the time and does not challenge it now. *Id.*; *see generally* ECF No. 63-1.

was severable and that if the conservative therapy requirements were excised, the remainder of the 2016 LCD could remain in effect. *Id.* at 2. Finally, they proposed that the case would become moot if a revised LCD—one without the conservative therapy requirements—went into effect retroactive to the date of the court's prior opinion and order. *Id.* at 3.

The court issued a memorandum opinion and order rejecting Mr. Greenwald's argument. ECF No. 61, at 2. It clarified the scope of its earlier opinion, explaining that "it decided only that [the court] has subject matter jurisdiction because the LCD's conservative therapy trial requirements conflict with the NCD," that it "did not decide whether there are other conflicts," and that it explicitly did not "reach any additional argument as to jurisdiction." *Id.* at 4, 10-11. The court further reasoned that the 2016 LCD's conservative therapy requirements were severable from the rest of the LCD. *Id.* at 12-17. However, the court declined to address Defendants' mootness argument "that compliance with [the court's June 2022 opinion] would fully resolve this action," opting to defer this question for later briefing. *Id.* at 17 n.2.

### 4.     Subsequent Alterations to the LCD

While the parties were briefing Mr. Greenwald's motion to clarify, Defendants filed a draft version of a new LCD that omitted language related to conservative therapy requirements. ECF No. 57-1. In July 2023, the MAC revised the LCD retroactive to June 7, 2022 (the date of the court's initial opinion and order) to remove the conservative therapy requirements. ECF No. 64, at 9. That version of the LCD remains in effect today.

### 5.     The Present Motions

In light of the court's resolution of Defendants' motion to dismiss and Mr. Greenwald's motion to clarify, the court ordered the parties to propose a briefing schedule related to Mr. Greenwald's prior motion for summary judgment. Aug. 22, 2023 Minute Order. Based on the parties' submission, the court set a schedule for renewed summary judgment briefing. Sept. 26,

2023 Minute Order. Pursuant to the court's order, Mr. Greenwald submitted a renewed motion for summary judgment. ECF No. 63. Defendants opposed that motion and separately moved to dismiss the case as moot under Rule 12(b)(1). ECF Nos. 64, 65. Both motions have been fully briefed. ECF Nos. 63, 64, 65, 66, 68.

### III.  Legal Standard

The plaintiff bears the burden of establishing subject-matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992). In reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court may also "consider materials outside the pleadings" on such a motion. *Jerome Stevens Pharms., Inc.*, 402 F.3d at 1253.

### IV.  Discussion

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Defendants argue that in light of the revised LCD, Mr. Greenwald no longer has a live case or controversy. ECF No. 64, at 13-21. The court agrees.

Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that plaintiffs "must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (first quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); then quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *Nat'l Treasury Emps.' Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). To satisfy the constitutional requirement for standing, a plaintiff must plead: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and

12

the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61).

The related doctrine of mootness requires that a plaintiff have a personal stake in the outcome of the action "at all stages of review, not merely at the time the complaint is filed." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385 (2018) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). If a case is moot, meaning that a "decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," there is no longer a "case" or "controversy" under Article III, and the court loses jurisdiction. *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)); *id.* at 385-86. The party raising mootness bears the "heavy burden" of persuading the court "that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). But once the initial burden has been met, the opposing party must show that an exception to mootness applies. *Planned Parenthood of Wisc., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019).

Defendants argue that Mr. Greenwald no longer has standing because the conservative therapy trial requirements—which the court previously held he had standing to challenge, ECF No. 52, at 28—are not part of the current LCD, Defendants have offered to reimburse him for any out-of-pocket costs he previously incurred, and he alleges no present or future harm from the LCD currently in force. ECF No. 64, at 17-21; ECF No. 68, at 1-7. Mr. Greenwald responds that he is still challenging both the process by which the current LCD was adopted and other provisions of the current LCD that are inconsistent with the NCD. ECF No. 63-1, at 26-31. He also argues that he will be harmed in the future when he needs to replace his PCD. ECF No. 66, at 7.

The court agrees that the matter is moot in light of the revised LCD currently in force. Mr. Greenwald's standing was premised on injuries stemming from conflicting language about conservative therapy requirements in the NCD and the 2016 LCD, but the conflicting language has been removed from the current LCD. Accordingly, Mr. Greenwald will not be affected by that language now or in the future. Nor is this a situation where the voluntary-cessation exception to mootness applies, because Defendants are not "manipulating 'the judicial process through the false pretense of singlehandedly ending the dispute,'" just to "restart [their] conduct once the case has been dismissed." *Pub. Citizen, Inc.*, 92 F.4th at 1128 (quoting *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam)). The MAC cannot simply turn around and reimplement the conservative therapy requirements. It is bound both by this court's June 2022 order and the MAC Manual's requirement that future substantive changes to the LCD be made in accordance with detailed procedures including notice and comment. *See* 13C Charles Allen Wright et al., *Federal Practice and Procedure* § 3533.6 (3d ed. 2024) ("Amendment or replacement of administrative rules or practices . . . can moot an attack"). The court has no reason to infer bad faith manipulation by Defendants, and Mr. Greenwald does not suggest as much. *See* ECF No. 64, at 20; ECF No. 66, at 8. Further, it is a "well-settled principle of law" that "when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot." *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1226 (D.C. Cir. 2021) (quoting *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016)). That is the case here. There is no longer a live controversy related to the LCD's conservative therapy requirements because that language has been eliminated.

Mr. Greenwald's remaining arguments do not save his case from mootness. To begin, it is not reasonably foreseeable that Mr. Greenwald will seek a new PCD and be denied coverage.

*Prosser v. Becerra*, 2 F.4th 708 (7th Cir. 2021), is a useful comparator. There, the court considered whether the plaintiff, a Medicare recipient suffering from a glioblastoma, had Article III standing to challenge an LCD that categorically denied a particular treatment known as TTF therapy as not "reasonable and necessary." *Id.* at 710, 712. Each time the plaintiff's claim was rejected because of the LCD, she utilized Medicare's appeals process. *Id.* at 712. She received two favorable coverage decisions and one unfavorable decision. *Id.* She always received the treatment and never had to pay the cost out of pocket, because she had never signed an advanced beneficiary notice. *Id.* at 712, 714. The court concluded that the plaintiff lacked standing because "[f]ar too many steps lay between the instant coverage denial and any future liability" for TTF therapy, and, more fundamentally, the LCD had been revised to presume coverage for TTF therapy. *Id.* at 715-16.

At this stage of the litigation, Mr. Greenwald is similarly situated to the plaintiff in *Prosser*—he is receiving PCD treatment for his lymphedema, and although his claim was once rejected and he paid out of pocket, there are no facts showing that this is likely to be the case again. ECF No. 64, at 18; ECF No. 66, at 7.[6] Similarly, to establish a concrete interest in the future, the court would need to speculate that Mr. Greenwald would once again "sign an advanced beneficiary notice" for a new PCD, and that coverage would be denied under the current LCD. But that is highly unlikely given that the current LCD omits the conservative therapy requirements that were

---

[6] Defendants maintain that "Plaintiff has not . . . provided evidence of any out-of-pocket expenses" for his previously denied PCD, but they have offered to reimburse Mr. Greenwald for any that were incurred. ECF No. 64, at 1 n.2. While, ordinarily, an unaccepted settlement offer does not moot a case, *see Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), that doctrine does not apply here because Mr. Greenwald did not seek monetary compensation for his previous PCD denial in his amended complaint. ECF No. 26, at 22-23 (seeking only declaratory and injunctive relief). Accordingly, any potential out-of-pocket expenditure for a device that was denied under the 2016 LCD is not a sufficient basis to keep this case alive. That is especially so when Mr. Greenwald repeatedly insists that "[t]his case is . . . not a challenge to an individual Medicare claim submitted on [his] behalf." ECF No. 66, at 2; *see id.* at 8 (explaining that "the challenge to a LCD is distinct from the appeal process for challenging an individual denied Medicare claim").

the basis for the previous denial. *See id.*; *see also Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) (explaining that the plaintiffs lacked standing in a suit related to pension plans where "[w]inning or losing this suit would not change the plaintiffs' monthly pension benefits").

Finally, Mr. Greenwald argues that "the basis of this action is a challenge to the process under which the LCD was created," so the procedural injury of an invalid LCD persists. ECF No. 63-1, at 27; *see* ECF No. 66, at 7 (arguing that "this litigation is not moot, as there is still a dispute over the flawed process used to adopt the [2016] LCD"). But a procedural injury alone is insufficient to satisfy Article III's case or controversy requirement. *Lujan*, 504 U.S. at 571-72. As explained, courts routinely find challenges to regulations moot where the agency excises the problematic language. *See, e.g.*, *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 221 (1st Cir. 2019) (concluding that plaintiff's procedural challenge to an agency rule was moot where new final rules were put into effect). The 2016 LCD ceased to exist when the relevant MAC excised the conservative therapy requirements. As previously explained, Mr. Greenwald has failed to identify offending language in the current LCD. Accordingly, Mr. Greenwald's alleged procedural harm—from the 2016 LCD—is insufficient to move forward without more.

For these reasons, the court finds that Mr. Greenwald's claim is moot and, as a result, the court lacks jurisdiction and must dismiss the case.

## V. Conclusion

For the foregoing reasons, the court will grant Defendants' Motion to Dismiss, ECF No. 65, and deny Mr. Greenwald's Motion for Summary Judgment, ECF No. 63, as moot. A contemporaneous order will issue.

/s/ Loren L. AliKhan  
LOREN L. ALIKHAN  
United States District Judge

Date: August 1, 2024